UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

STEVEN J. LANGLOIS,            )
                               )
           Plaintiff,          )    06-2163
                               )
      v.                       )
                               )
DEPARTMENT OF HUMAN            )
SERVICES, State of Illinois,   )
                               )
           Defendant.          )

ORDER

The plaintiff, Steven J. Langlois ("Langlois") commenced this action on August 29, 2006. Langlois claims that his employer, Shapiro Development Center (Shapiro), a facility operated by the State of Illinois Department of Human Services, ("DHS"), discriminated against him because of his disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

DHS has filed a motion for summary judgment. For the following reasons, the motion [28] remains pending to allow for further briefing.

BACKGROUND

Shapiro is a mental health facility that provides services to individuals with mental health problems or developmental disabilities. Langlois worked at Shapiro as a Mental Health Technician I from October 1998 to April 2005. Langlois was responsible for the care of up to eight resident clients in a particular wing and floor at Shapiro.

Langlois suffers from major depression, anxiety and suicidal thoughts. In May 2004, a coworker at Shapiro saw Langlois standing in the street trying to get run over by a car. The coworker took Langlois to St. Mary's Hospital in Kankakee, Illinois, where he stayed for several days. Upon discharge he was prescribed antidepressant medication.

Shapiro's General Personnel Policy addresses sleeping on the job: "38. SLEEPING ON DUTY - First time - 15 day suspension; second offense is cause for discharge." Shapiro General Personnel Policy, ¶ 38. On September 27, 2004, Langlois was cited for sleeping while on duty. He had a pre-disciplinary hearing, after which DHS determined that he had, in fact, been sleeping while on duty. Langlois received a fifteen-day suspension.

In December 2004, Langlois started taking Lexapro, an antidepressant medication. A possible side effect of Lexapro is sleepiness.

On March 8, 2005 Langlois worked a double shift, from 2:45 p.m. until 7:00 the next morning. He reported for work at 2:45 p.m. on March 9, 2005, for the start of his regular shift. His personnel records indicate that he was caught sleeping about two hours into his shift, at 4:55 p.m. A pre-disciplinary hearing was held, at which Langlois presented DHS with a note from his physician indicating that he was taking Lexapro, a side effect of which was sleepiness. DHS determined from the evidence presented at the hearing that Langlois had been sleeping on duty on March 9, 2005. He was discharged on April 26, 2005.

Langlois cannot now remember how many pills he took on the day of the second sleeping incident. When deposed, Langlois stated that he'd been working so much that he couldn't keep track of how much medication he'd been taking. Langlois Dep. 64. Langlois further explained that he took his daily dose of Lexapro at different times of the day, depending on his work schedule: "So, you know, I take it in the morning if I was only working in the evening, and I did take it in the afternoon if I was only working in the morning." Sometimes he took an extra pill, but "there are some days I can't remember how many I'd taken." Langlois admitted that, on those days, it was possible he had taken more than two pills, perhaps as many as five. Langlois Dep. 38-39. After the incident, Langlois reported to his doctor that he had been discharged from his job because he fell asleep at work[1] and told her that he couldn't remember how many times he had taken his Lexapro. Pappa Dep. 10. Dr. Pappa states that if more than the prescribed amount is taken, it can exacerbate the sleepiness. Pappa Dep. 10.

Langlois filed a charge with the EEOC, stating that in December 2004 and March 2005 he was disciplined for "allegedly sleeping on the job." He stated that he was subsequently discharged and that coworkers accused of similar actions were not discharged from employment. He believed he was discriminated against because of his disability in violation of the ADA.[2]

## ANALYSIS

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v.*

---

[1] At his deposition, he indicated that he did not know if he was sleeping: "All I can remember is I was in my group room with all my individuals sitting at a table and that's the last thing I remember." He did not remember falling asleep or waking up; he remembered "lifting my head off the table. The only thing I can remember is all the guys looking at me, and then I walked out of the room and I was brought into the office." Langlois Dep. 61-62.

[2] Langlois' complaint asserts a disparate treatment claim under the ADA. *See* Order, July 30, 2007, d/e 13. Langlois does not allege that Shapiro failed to make reasonable accommodation for his disability. He indicates that he made several verbal requests to take personal leave due to his depression, but he has not brought a claim against DHS pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*.

*Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).  The party moving for summary judgment must show the lack of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000).  A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial."  *See* Fed. R. Civ. P. 56(e).   In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts."  *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

The ADA states, "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

A plaintiff might prove an ADA claim under either the direct or indirect methods.  To prove his case under the direct method, Langlois must show that DHS had a discriminatory motivation – either an outright admission of discrimination or circumstantial evidence pointing directly to a discriminatory reason for an adverse employment action.  *Timmons v. General Motors Corp.*, 469 F.3d 1122, 1126 (7th Cir. 2006).

Under the indirect method, the plaintiff must show that:  (1) he is disabled; (2) he was performing his job in a satisfactory manner; (3) he was subjected to an adverse employment action; and (4) similarly situated employees who are not disabled were treated more favorably. *Timmons,* 469 F.3d at 1126 (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  If the plaintiff makes the requisite showing, the burden then shifts to DHS to articulate a legitimate, non-discriminatory reason for the discharge.  *McDonnell Douglas*, 411 U.S. at 802.  If the defendant meets its burden, the plaintiff must show that the articulated reason was pretextual.  *McDonnell Douglas*, 411 U.S. at 804.

The parties assume for purposes of this motion that the plaintiff is disabled.  They disagree over whether similarly situated individuals were treated more favorably.  However, they do not address the initial hurdle: Langlois cannot prevail if he is not "a qualified individual with

a disability." As the court sees it, Langlois may not be "disabled" pursuant to the ADA. Thus, the court's inquiry begins there.[3]

Not every person with a physical or mental impairment is considered disabled. "The term 'disability' means, with respect to an individual . . . a physical or mental impairment that substantially limits one or more of the major life activities of such individual[.]" 42 U.S.C. § 12102(2)(A). Langlois has depression, a mental impairment. Most circuit courts that have been presented with the issue have determined that sleeping is a major life activity. *See Kurth v. Gonzales*, 472 F. Supp. 2d 874, 880 (E.D. Tex. 2007) (noting that "the weight of authority suggests that sleeping . . . qualifies" as a major life activity, citing cases from the Second, Fourth, Sixth, Ninth, and Tenth Circuits).[4] The court must consider any measures to correct or mitigate the impairment, and the effects of those measures, both positive and negative, to determine whether the individual is substantially limited in a major life activity. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999). Stated in terms of this case, Langlois suffers from a mental impairment (depression), for which he takes a corrective measure (Lexapro) that negatively impacts a major life activity (sleeping, or its converse, staying awake).

For Langlois to be considered disabled, he must show a *substantial limitation* in his ability to regulate his sleep. The Code of Federal Regulations defines substantial limitation as an *inability* to perform – or *significant restriction* as to condition, manner, or duration under which an individual can perform – a major life activity that the average person in the general population can perform. 29 C.F.R. § 1630.2(j). Langlois has periods of sleep and wakefulness; thus, he does not have an inability; at most, he has a restriction as to condition, manner, or duration of his ability to sleep or stay awake. But the ADA requires more than a restriction; it must be a *significant restriction.*

Thus, for Langlois to be disabled under the ADA, his mental impairment (depression), mitigated by corrective measures (Lexapro, taken as prescribed), must substantially limit the

---

[3] It is uncontested that DHS did not discharge other employees who were alleged to have slept while on duty. DHS claims either that those employees were not similarly situated because they were determined *not* to be sleeping on the job or that their discharge was unwarranted because of mitigating circumstances. However, the facts, if presented to a jury, might show that Langlois had not been sleeping while on duty. Moreover, he had worked a double shift the night before. Thus, the court cannot determine whether he was similarly situated to those who received more favorable treatment or whether the failure to find mitigating circumstances in Langlois' case was pretext.

[4] It should be noted that the cases cited in *Kurth* dealt with insomnia or erratic sleep rather than sleepiness.

major life activity of sleeping or its converse, staying awake.[5]

As noted above, the parties have not discussed this aspect of the case. Consequently, the court grants the parties an additional seven days to supplement their briefing to address this issue only.

## CONCLUSION

The parties shall file supplemental briefs, limited to an analysis and discussion of Langlois' alleged disability under the relevant statute and regulations. The briefs shall be filed on or before November 20, 2008. No responses or replies will be allowed. The motion for summary judgment [28] remains pending.

Entered this 13th day of November, 2008.

**s\Harold A. Baker**
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE

---

[5] Langlois' depression itself does not substantially limit a major life activity because the depression is mostly under control with Lexapro. Langlois admits that on some days he feels good and on others he "want[s] to die. Langlois Dep. 40. But on the bad days, he was able to function while at work; his depression worsened when he got home. Langlois Dep. 40. Thus, his sleepiness is not a direct effect of his depression; it is a side effect of the corrective measure. In addition, intermittent or episodic impairments are not disabilities. *See Duff v. Lobdell-Emery Mfg. Co.*, 926 F. Supp. 799, 808 (N.D. Ind. 1996).