UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| STEVEN J. LANGLOIS, | ) | |
| | ) | |
| Plaintiff, | ) | 06-2163 |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF HUMAN | ) | |
| SERVICES, State of Illinois, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Steven J. Langlois ("Langlois") commenced this action on August 29, 2006. Langlois claims that his employer, Shapiro Development Center ("Shapiro"), a facility operated by the State of Illinois Department of Human Services ("DHS"), discriminated against him because of his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.

DHS filed a motion for summary judgment. After a careful review of the motion, response, and reply, the court ordered the parties to file supplemental briefs addressing the initial inquiry in any ADA case: whether the plaintiff is disabled within the meaning of the ADA. For the following reasons, the court concludes that Langlois does not have a disability within the meaning of the ADA and grants the defendant's motion for summary judgment.

BACKGROUND

Shapiro is a mental health facility that provides services to individuals with mental health problems or developmental disabilities. Langlois worked at Shapiro as a Mental Health Technician I from October 1998 to April 2005. Langlois suffers from major depression, anxiety and suicidal thoughts. In May 2004, after a brief hospital stay, Langlois was discharged and was prescribed antidepressant medication.

Shapiro's General Personnel Policy addresses sleeping on the job: "38. <u>SLEEPING ON DUTY</u> - First time - 15 day suspension; second offense is cause for discharge." Shapiro General Personnel Policy, ¶ 38. In September 2004, Langlois was cited for sleeping while on duty. He received a fifteen-day suspension.

In December 2004, Langlois began to take Lexapro, an antidepressant medication. A possible side effect of Lexapro is sleepiness. Langlois was aware of the side effect. He states that he did not always work the same shift, so to minimize the impact of this side effect on his employment, he took his daily dose of Lexapro when the side effect would be less likely to interfere with his work. As a result, he did not take his medication at the same time every day.

1

On March 8, 2005, Langlois was again caught sleeping while on duty.[1] At a pre-disciplinary hearing, Langlois presented DHS with a note from his physician indicating that he was taking Lexapro, a side effect of which was sleepiness.[2] He was terminated from his job on April 26, 2005.

Langlois' prescription was for one daily dose of Lexapro. But he did not always adhere to the dosage prescribed by his doctor. Sometimes he would take two or more – and as many as five – doses in a single day. When deposed, Langlois stated that the day before the second sleeping incident, he'd worked two shifts, taken one shift off, and then returned the next day for his regular work shift. He explained to his supervisor as he was escorted from the work site that he'd been working so much that he couldn't keep track of how much medication he'd been taking. He also told his doctor about the incident, stating that he couldn't remember how many times he'd taken his Lexapro.[3]

Langlois filed a charge with the EEOC, stating that in December 2004 and March 2005 he was disciplined for "allegedly sleeping on the job." He stated that he was subsequently discharged and that coworkers accused of similar actions were not discharged from employment. He believed he was discriminated against because of his disability in violation of the ADA.

## ANALYSIS

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts

---

[1] The court will refer to this as the "second sleeping incident." At his deposition, Langlois stated that he did not know if he actually was sleeping. The dispute is immaterial, however. It is undisputed that he was terminated for a second incident of sleeping while on duty.

[2] Langlois has not argued that he presented the note to obtain reasonable accommodation for his disability. It seems he offered the note as evidence in mitigation. It is true that Shapiro did not terminate other (perhaps similarly situated) employees after two sleeping incidents, as it found mitigating circumstances in those cases. That Shapiro found no mitigating circumstances in Langlois' case might raise the inference of pretext. However, these facts relate to other elements of the *prima facie* case and the parties' shifting burdens under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 804 (1973). If Langlois is not disabled as defined by the ADA, the court has no need to reach these issues.

[3] In light of these statements, no reasonable jury could conclude that it is more probably true than not true that Langlois had taken just one dose of Lexapro that day.

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

The ADA states, "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

Not every person with a physical or mental impairment is considered disabled under the ADA. "The term 'disability' means, with respect to an individual . . . a physical or mental impairment that substantially limits one or more of the major life activities of such individual[.]" 42 U.S.C. § 12102(2)(A). The court must consider any measures to correct or mitigate the impairment, and the effects of those measures, both positive and negative, to determine whether the individual is substantially limited in a major life activity. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999).

Stated in terms of this case, Langlois suffers from a mental impairment (depression), for which he takes a corrective measure (one dose of Lexapro) that negatively impacts a major life activity (sleeping, or its converse, staying awake).[4] For Langlois to survive summary judgment, he must show that the negative impact amounts to a *substantial limitation*.

Langlois argues for an outcome-driven definition of substantial limitation. He argues, "it would be an anomaly for the Court to rule that for the purposes of determining whether Plaintiff was disabled, [his impairment] was not substantial," because, after all it was significant enough to cause his termination. However, the Seventh Circuit rejected this approach in *Siefken v. Village of Arlington Heights*, 65 F.3d 664 (7th Cir. 1995), a case factually similar to Langlois'. Police officer Siefken was terminated after suffering a diabetic reaction; he claimed his discharge violated the ADA. *Siefken*, 65 F.3d at 665. "The Village hired the plaintiff knowing

---

[4] As the defendant correctly notes – as did the court in its November 13, 2008, order – the case law pertaining to sleeping as a major life activity deals with insomnia or disruptive sleep. In Langlois' case, he had difficulty staying awake – the converse of sleeping. The court assumes, without deciding, that staying awake is a also major life activity.

3

that he was a diabetic; apparently, it believed that Siefken could monitor his medical condition sufficiently to allow him to perform the duties of a patrol officer. They fired him only when he proved them wrong." *Siefken*, 65 F.3d at 666. The cause of his termination was not his diabetes; "the more immediate cause of the incident leading to his termination was his failure to monitor his condition. . . . [He] cannot now claim that the Village must pay for his failure." *Siefken*, 65 F.3d at 666. Langlois admits that he sometimes took significantly more medication than prescribed. Taking extra doses of Lexapro exacerbates the side effects. Langlois cannot remember how many doses of Lexapro he had taken on the day of the second sleeping incident. As *Siefken* makes clear, the ADA does not protect an individual who causes his own problems by deviating from prescribed corrective measures.

The approach specified in the Code of Federal Regulations focuses on the disability rather than the adverse employment outcome. Under the ADA, an impairment "substantially limits" a major life activity if it prevents or significantly restricts an individual from performing that activity, compared to the average person in the general population. 29 C.F.R. § 1630.2(j)(1). It is uncontested that Langlois is not prevented from sleeping or staying awake. At most, he has a restriction. But to succeed in his lawsuit, he must have a *significant* restriction.

To determine whether a limitation is substantial, the court looks to (1) the nature and severity, (2) duration or expected duration, and (3) permanent or long term impact. 29 C.F.R. § 1630.2(j)(2). Langlois has not shown that one dose of Lexapro renders him unable to stay awake. There is no evidence that, other than the second sleeping incident, Langlois fell asleep at subsequent jobs or at other inappropriate times. The doctor stated that taking more Lexapro than prescribed exacerbates the sleepiness; this leads to the inference that the exaggerated side effect lasts until the medication wears off. Moreover, Langlois admits to having taken antidepressants other than Lexapro; there is no showing that all antidepressants would cause him to become sleepy. The evidence supports the conclusion that when Langlois takes more medication than his doctor has prescribed, he is extremely (but temporarily) sleepy. His impairment does not amount to a substantial limitation under 29 C.F.R. § 1630.2(j)(2).

Langlois does not address the factors found in 29 C.F.R. § 1630.2(j)(2). Instead, he compares his situation to that of an average person in the general population, citing 29 C.F.R. § 1630.2(j)(1). "Difficulty sleeping is extremely widespread . . . suffered by a large portion of the nation's adult population." *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 644 (2d Cir. 1998). Thus, if sleep problems are widespread, it is reasonable to expect that a large portion of the population is tired or sleepy, and Langlois, after taking the prescribed dosage of Lexapro, is not so different. And when Langlois causes uncontrollable sleepiness by exceeding the prescribed dosage, he cannot hold his employer liable for his conduct.

## CONCLUSION

4

For the foregoing reasons, the motion for summary judgment [27] is granted. This case is terminated. The parties shall bear their own costs.

Entered this 25th day of November, 2008.

**s\Harold A. Baker**
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE